Good morning, Your Honors. Justin Parafinsic for the Plaintiff Appellant Norma Olmo. May it please the Court. We're here today seeking reversal of the trial court's grant of summary judgment on the failure to warn claim in this case. It's our position that there are five points that led the district court to making an error in dismissing the failure to warn claim. The first is that the district court seems to have accepted the defendant's argument that the IFUs, which are the instructions for use that are given to physicians in these matters with a product that they're going to insert, that these are the equivalent to a warning. It's our position that it's not, it's not an adequate warning, and we don't believe that the district court applied the case law that's out on this issue, which goes to the Brown v. Glade case out of the Fourth District Court of Appeals in Florida. It addresses the concept that a warning may be defective by inadequate wording, but also as a result of its location, manner in which it's conveyed. Our experts in this case, Dr. Parisian and Dr. Comparatore, the implanting doctor, are both of the opinion that this warning was inadequate, although it appears that the district court, it's his opinion that, frankly, this warning was very straightforward, and apparently the doctor was informed and my client, Ms. Olman, was informed, and therefore, there's no case, there's no need for it to go forward. Obviously, we disagree. The location, the manner, these are issues, specifically, if you want to get to the crux of it, there's issues with what this patch does inside of an individual. Does it stay fixated? Judge Cohen would say, well, physician, Mr. Comparatore, you were warned that this would have a loss of fixation, but the problem for us is that that warning doesn't go far enough. Does the warning use the word fixation or loss of fixation? That word is in the instructions for use, Your Honor, that's there. Our issue is that it doesn't go any further than that, and warn these women, individuals, that this patch can fold, causing the adhesive side, the PET fibers, to be exposed to your bowels. I don't understand your argument to be that. My reading, and I have just yesterday re-read your blue brief to see precisely what you argue. When you argue about why the warning was inadequate, you argue only that there was no warning that the ring itself buckled. That's correct, Your Honor. That is the argument. Where it becomes muddy, and I can certainly understand the court struggling with all of this because of so much medical testimony, but where it becomes muddy is these doctors, all the experts, use these words interchangeably, buckling, folding, and a break is different. I'll concede that. There's an issue with that, buckling and folding. I think the problem with your case is that there's no evidence at all that the ring itself buckled. In this case, Dr. Farzooka suggests that the ring might buckle in some other theoretical case, but in this case, there is no evidence at all that the ring buckled. There is evidence that the edges of it folded down. What the district court said was your alternative theory was that it did buckle, notwithstanding that it did not break. Tell me where any doctor, including . . . I understand you rely primarily on Dr. Farzooka, but he talks about the mesh buckling, but he never talks about the ring itself buckling. Right, Your Honor. It's obvious that you've delved into these issues and have an understanding of it. I would simply submit to you that our case is not flawed at all. What's the problem? It's not what? It's not flawed, Your Honor. If you have no evidence of your only theory, it seems like that might be a flaw. It's not, Your Honor. The issue that I'm driving at is that these words, fold and buckle, are used interchangeably by all the experts. They have the same effect. The problem is that a fold, you've got the patch, it folds over. That's not the point. The point is . . . It's a buckle. The point that I just thought I made with you is that your only argument is that the ring itself, within the patch, itself buckled, and there is no evidence of that. There is, Your Honor. It's just the other experts and the other testimony, they're calling it a fold. This is the defense's . . . So your position is it did buckle. There was evidence that it's buckled, and the evidence is found in those experts who used the terms interchangeably and said there was a fold. It's simply . . . Is that right? Yes, Your Honor. That's your position. It's simply a choice of words. Plaintiff's experts use the word buckle a lot more than the defense experts, as you can imagine. They use the word fold. It is exactly the same thing that's happening with the patch and what's injuring these people in these cases. I need to clarify something. You first traveled on the theory that the ring broke. The ring broke. That's one theory of what happened here. The ring broke, caused loss of fixation, but it seemed like another theory that you had was that the mesh, because it was a bodily movement or different contraction rates, folded and buckled. That's right. Are those the two separate theories? They are separate, Your Honor. I thought what Judge Anderson was trying to ask you is on your failure to warn, you were seeing buckling or breaking, but you didn't make a claim about failure to warn about the different contraction rates. Did you make a claim about failure to warn that there could be bodily forces, just regular movement that could cause the folding of the mesh, or different contraction rates could cause the folding of the mesh? Your Honor, there's no precise answer to these issues, so yes, we advanced a break claim and a buckle claim, and I can tell you what we pled in the complaint. The break claim really dealt with the ring itself, whereas the buckle and folding claim dealt with the mesh, is that right? That's right, Your Honor. That's not what you say in your blue brief from page 19, et cetera, et sec. From page 19, et sec., where you talk about the warning being inadequate, the only thing you talk about is that the ring itself buckling. You don't talk about the mesh buckling. Your Honor, that's imprecise wording by us in the brief. That's the only response I have to that. The way I understand this case is that your case below was primarily a ring break case. You even said that in your brief to the district court. You said this is a ring break case. On appeal, the district court said there's no evidence of a break, and you didn't offer any evidence about there being a loss of fixation, notwithstanding that the ring is intact. That was the language of the district court. You start off with your issue that there is an issue on appeal that the patch lost fixation, notwithstanding the ring was intact. But then when you argue about the inadequate warning, you argue solely about the ring buckling, which is different, as I understand it. You have conceded, in effect, by failing to argue that the warning was inadequate with respect to the loss of fixation because it folded or because of anything other than the ring buckling. Then I look at the evidence, and I don't see any evidence that the ring itself buckled in this particular case. I'll take just a couple portions of that, Your Honor. The strongest cases of these cases are ring break cases, so that's what we advanced. As a trial lawyer, I go into court, and the trial court judge . . . You abandon that on appeal? Yeah. The trial court judge says, look, your expert doesn't hold water. My next option, which is something that we pled, is an alternative theory. It doesn't mean that, look, I threw my hands up and said we lose or this was the day. There's a whole reason that I pled the alternative theory, and I understand you have issues with the way that it was done, but I think the issue is the language that's being used to explain these things that happen. It's complicated medical terminology, and I have to do my best to put forth what I believe happened to this woman, and that's the way we see it. I look at our complaint, and it looks to me as a trial lawyer that this was pled properly, and that we advanced this theory, and the trial court judge just ignored the evidence that we poured forward on this, and focused entirely on the Daubert hearing, and that he didn't like Dr. Ducheney, and this whole case should just be thrown out. The failure to warn claim shouldn't have been thrown out, and that was my assessment at the hearing, frankly, that I thought that Ducheney was going to get thrown out, and this is where we'd be, trying a failure to warn claim. The evidence... Where did you claim that the cause of the loss of fixation was the mesh folding and buckling? This is the exact language, if I can just read, that I have. Paragraph 30 in the complaint. Paragraph what? Paragraph 30 in the complaint, Bard owed a duty to plaintiffs to adequately warn her and her treating physicians of risks of separation, tearing, and splitting associated with composite Kugel mesh, and the resulting harm and risk it would cause patients. If this language needed to be amended at some point, I think I have the right to do that going into trial as well, but I think that this is sufficient. I don't... Read it one more time. Bard... Paragraph 30, Bard owed a duty to plaintiffs to adequately warn her and her treating physicians of the risks of separation, tearing, and splitting associated with the composite Kugel mesh, and the resulting harm and risk it would cause patients. Okay, so that goes to the mesh, that's what you're saying, that's a mesh paragraph. I didn't hear mesh in there, and furthermore, you have to do more than, at summary judgment, you have to do more than rely on your complaint. When you look at your brief to the district court, you argued about ring, break, and there were two sentences at page 11 of your brief that talked about Dr. F and did refer to mesh, but I doubt that the district court even looked at that because the whole brief was about ring breaking and about the ring itself either buckling or breaking. And then, if the only inadequate warning was that the ring itself buckled or broke, which is all I see in your brief on appeal, which you have, it seems to me, acknowledged a minute ago, then we look to see whether there's any evidence that the ring itself buckled. And I have read Frazoco's testimony, which is the only testimony you cite in your brief for that proposition, and I don't see any evidence at all that the ring itself buckled. That's my problem. If you can point me on rebuttal to some parts of Frazoco's testimony that talks about the ring itself buckling, that would be helpful to me. I understood, Your Honor, and I agree we could have done better with the trial court brief and we could help the trial court judge out, but I . . . All right. Well, you have reserved three minutes for rebuttal, but you might want to zero in on where in the record we can find evidence from which to say or infer that the ring buckled in this case. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the Court, James Martin for DeVol and Bard. Picking up on the last point, Your Honors, the testimony that has to do with the ring at the time of explant in this case came from Dr. Weinstein, and he was unequivocal that there were no ring issues related to the ring that he explanted from . . . during the surgery, and he might not have looked at the ring closely. He certainly said that, but Dr. Weinstein's testimony was not contradicted as to what he saw and what he knew. The second point on this, Your Honor, is even taking Dr. Furzoco's testimony into consideration, we don't get past the waiver issue here, and the waiver issue has to do with the plaintiffs never having made, on summary judgment, the argument that Dr. Furzoco's defect testimony was the proximate cause or the failure to warn issue related to Ms. Olmo. Ring break certainly was argued, but not buckle defect. And that's why the trial court . . . When you say buckle defect, you mean buckling of the mesh or buckling of the ring? It could be buckling of either one. No buckling theory of defect was argued, whether it was folding or the ring, in the summary judgment briefing. And if you look in through that briefing, you won't find that argument. If you look at the briefing on appeal, you won't find a citation from the summary judgment briefing to that argument. And that's why the district court didn't address it. I thought there were two sentences at page 11 of the district court's . . . of the brief that plaintiff filed to the district court, and I'm going to read those two sentences. And I do think those two sentences talk about a problem with the mesh buckling and folding. And therefore, and I think it's . . . I know that these two sentences might not have been enough to alert the district court that that's what he was talking about. But then when he argues on appeal, nothing but the ring itself buckling, that . . . this is not relevant to that. But as to the mesh buckling, I think there's sufficient evidence in the record in Dr. Verzocco's testimony. And he does refer to that in these two sentences. Dr. Verzocco, an expert retained by plaintiffs in this case, states that the forces acting on the ring caused the mesh to buckle and fold. These contracture forces allowed the mesh to buckle or fold, causing the loss of fixation, which then resulted in the patch eroding into the bowel. And he cites pages of the deposition that do support that. Page 53, line 11 to 17, and page 94, 1 to 7. So I think he has preserved an argument, or maybe, if these two sentences are enough, at least that's arguable, that the mesh buckled. But that's not enough if the warning was sufficient to warn the doctor of loss of fixation caused by anything other than the ring itself buckling. So Your Honor, let me answer that in two ways. The first is to make sure that the Court understands my waiver argument. The waiver argument has nothing to do with causation. It has to do with defect. The buckle theory was never offered as a defect theory in front of the trial judge. And that is waived for purposes of appeal. So there's no defect theory left in this case. On the causation point . . . And that would be enough for you to prevail, that's what . . . Yes, it would be, Your Honor, as our brief points out. Because the critical defect theory is abandoned and not addressed. Now let me get to this causation point, because that's all Dr. Furzocco was talking about in that reference. And that brings us to the independent ground that makes the adequacy of the warning or even this defect debate academic. And that is there's no evidence in the record that a buckling theory of any kind, however framed, was approximate cause of Ms. Olmo's injuries. To start with, Your Honor, Dr. Comparatore was never asked that question and never responded to it. And that evidence, of course, is critical from approximate causation standpoint under Florida law. The second thing is their testimony that Dr. Comparatore gave was affirmative that he understood the loss of fixation could result in the precise injuries that Ms. Olmo had, that he advised her of that, she was adequately warned, and that he would use this product again. So we not only have no testimony on proximate cause that buckling matters to Dr. Furzocco or Comparatore, but we have affirmative testimony that buckling, which results in a loss of fixation and results in injuries like adhesions or fistula, was known to Dr. Comparatore. It was known to physicians in the field. So... But I thought that he testified that, yeah, he knew about the loss of fixation as a risk, but he didn't know the causes of the loss of fixation. Isn't that correct? Actually, that testimony isn't in his deposition. That's an argument made by the plaintiffs. But the point is, Your Honor... Well, he never says what the causes of the loss of fixation were that he knew about. Let's say that. Right. He never says, oh, I knew the ring could break and that could cause loss of fixation. He just says, I know, generally speaking, loss of fixation is a risk. Is that a fair summary? Yes. Did Comparatore say that bodily forces acting on the patch could cause the loss of fixation? No, he didn't. But Your Honor, he never said that he wouldn't have used the patch even if he had known that, that his decision would have been different. That's the relevant issue. And on that point, again, he was unequivocal that the injuries... Well, Dr. Comparatore has asked the following question. The reason for the recall of the CK patch was that certain surgeons were creating too aggressively the short axis weld and the memory ring was breaking. Do you understand that, Dr. Comparatore? No. My impression was that there was fatigue of the metal because the abdominal wall is a dynamic wall and it moves. And when you move the metal, you fatigue the metal. If you get a clip and you start doing this with a clip, you're going to break it. And this in the abdominal wall is doing this because the abdominal wall is dynamic so the metal may be fatigued and it could break. So, that testimony, Your Honor, never went the next step and said, did your awareness of that matter in your decision here? And there is... Goes on. Question. In terms of the way that you implant, that you implanted the composites, Kugel with Mrs. Omo, was that a concern of yours? Answer, Dr. Comparatore, yes. Right. But the risk of the issue in terms of would it have changed his treatment? I only raise it because it looked to me like Comparatore adequately understood the loss of fixation risk attributable to the implementation complications. I agree with that, Your Honor. But my point is just as fundamental that... And that suggested that he had sufficient knowledge for the application of intermediary. I agree with that, too. But apart from that, the proximate cause defense that we're making is just as dispositive as the fact that the learned intermediary defense applies as well. The district court called it proximate cause and the testimony that's missing here on that point is that Dr. Comparatore never said, if I was armed with information about buckling, I would have made a different treating physician's decision. Now he also had substantial information about the risks which were known to ordinary physicians which he testified to and the precise risks that were involved in Ms. Omo's surgery which he disclosed as complications and she understood those warnings. There isn't even an inference in this record, Your Honors, that counters either the proximate cause argument or if we want to take it the next step to learn an intermediary, both issues were relied on by the district court. The plaintiffs point to only three pieces of testimony on that. The first is that his information was only adequate at the time and the plaintiffs take that to mean that had he known about buckling at the time, his treating decision would have been different. But if you look at that deposition colloquy, it doesn't substantiate the point. Buckling isn't ever mentioned in that discussion in the deposition and what he's referring to that he didn't know at the time or he would have done differently was to do the surgery robotically. There is nothing about buckling in that colloquy. Then they argue that he said he wasn't adequately warned. That statement, Your Honors, which comes up in the depo at 51 to 53 is chopped right there and taken out of context and it creates a misimpression because what Dr. Comparatore then goes on to talk about is warnings to the patient. When he answered that question, what he meant was I'm not the one who gets warned. The patient gets warned. In the colloquy that follows, he makes it clear that the thrust of his testimony is back to Judge Marcus' point, he knew the risks, he knew the complications, he told her and she was adequately warned. At page 71 of his deposition, he makes that statement unequivocally. There is no way to get from that statement to a plausible inference that had he known about buckling, there would have been a difference in his treating decision. Warnings use the term loss of fixation. Yes. Well, the warnings talked about the mesh eroding into the bowel, which is the- Yes, but they don't use the term loss of fixation. No, they don't. But the loss of fixation, the record testimony is undisputed, was a well-known risk of every hernia patch implant, whether there was a ring product or there wasn't a ring product. Dr. Comparatore said that, Dr. Weinstein said that, Dr. Fersoco said that, and in fact, Dr. Fersoco said, I don't know that the incidence of loss of fixation is any different with a ring product. So there was no reason for Dr. Comparatore to do anything other than what he said, which was evaluate the risks that he knew, and then he stated emphatically, this was the best product for this surgery at the time for Ms. Olmo's very serious medical conditions. And that testimony was never qualified. So what we have is, to start at the top, your honors, a waiver on the defect theory. We have a physician who was adequately warned of the risks and understood the risks, moreover, even if the warning was inadequate. And finally, we have proximate cause and learning intermediary as defenses underneath that. That makes this case fundamentally different from Horio. In Horio, there were two things that weren't going on in this record. The first was, the risk that was unknown to the physician was an injury that was far more severe than the injuries that the physician thought could result from the procedure. Here, Dr. Comparatore knew the precise risks that could result from the procedure, and the injuries, excuse me, that could result from the procedure. That was adhesion in the warning, fistula in the warning, recurrence of the hernia repair in the warning. And he also knew that of his independent knowledge. Finally, in terms of... Didn't he think all of those problems were caused by the fatigue of the metal, and he bodily forces? Your Honor, that is argument. It's not in his deposition testimony. But he doesn't say, I know those causes. But he doesn't have to. First of all, he knows the injuries that could occur as a result of the cause. That's what the case law focuses on. But he does say, as Judge Marcus quoted a few minutes ago, the risk of loss of fixation was related to the fatigue in the metal, because of movement in the abdominal wall. So inferentially, he didn't know. We've got the one doctor saying, here's the cause, it's buckling, folding. We got cause testimony. Her problem was buckling, folding, mesh, caused by either divergent shrinkage rates or body movement. We got that testimony, right? We have that testimony in the abstract, Your Honor. What we don't have is proximate causation testimony. And we don't have testimony that the physician wasn't fully armed with knowledge of the injuries. Those are the two key pieces that the record needs that it doesn't have. He knows about the potential injury. He doesn't know the cause of the injury. But the case law focuses on the injuries. Do you admit he doesn't know the cause of the injury? He knows that you could have an injury from this patch? From any implant? Well, didn't he know one of the causes? To the extent, and maybe I've misapprehended the technical evidence here, but did he not know that bodily forces acting on the patch could cause the loss of fixation? He testified to that, yes, he did, Your Honor. So he knew some of the causation and he knew some of the result. And loss of fixation. Is that a fair statement? Yes. He knew exactly what the results would be. He was warned of the injuries. That's a level playing field there. Loss of fixation can come about through a variety of problems at implant, with the sutures, et cetera. The buckling phenomena was not known to Dr. Comparatore. He had never seen it in any of his patients and he hadn't heard about it. What he testified to was what he learned about the ring break from the recall. But on the buckling theory, Dr. Comparatore stated that the end point of it, as Dr. Frizzoco said, was loss of fixation. Everyone knew that loss of fixation could come about from implantation and no one said that a composite Kugel patch with a ring loses fixation any more frequently than any other surgery with a hernia patch. So the playing field on that point, Your Honor, is level. Equally importantly, the record doesn't take the next step through expert testimony or otherwise to fill in the proximate causation or learned intermediary testimony. That's what the trial court found. That has nothing to do with the adequacy of the warning. Whether buckling was in there or not, you still have to take that next step. This court's opinion in Yeham makes that abundantly clear. Again, a case that's distinguishable because the physician in that case testified that had the information been known, the decision would have been different. Thank you. Dr. Comparatore never said that. Thank you. Why don't we begin in the short period of time that we have on rebuttal with you citing us where in the record we can find evidence that the ring actually buckled in this case? Yes, Your Honor. As you requested in our summary judgment brief and the counterstatement of facts, I picked out four examples. I'll preface this with saying that I understand that some of these start with the statement the mesh and not the ring buckled. Do you want to proceed and tell us where we can find it? Yes, Your Honor. Of course. Tell us in that case whether it said mesh or ring. Right. Paragraph 162 on page 49 of the counterstatement of facts. The mesh had buckled and folded. Obviously, that's a reference to mesh, Dr. Frazzoco. Paragraph 164, the mesh was no longer planar at the time or planar at the time of her September 11th operation, which that indicates a fold or a buckle. Those are interchanged. Are we talking about the ring or the mesh? This is the mesh specifically, Your Honor. This is the reason why these jump back and forth. I understand. Go ahead. So both of those, 162 and 164, refer to the mesh buckling or breaking or folding. So on page 50, paragraph 173, Dr. Frazzoco says any loss of fixation was caused by buckling of the patch. So now he's referenced the entire patch. That's the way I look at it when I explain it as I talk about the patch buckling or the fold. Okay. Buckling. Where else? The final one, this is sort of his whole statement on causation, but it's in there. Paragraph 184, page 51, in short, the contracture forces allowed the mesh to buckle and fold, causing a loss of fixation when resulting with the patch eroding into the bow. So there he's referencing mesh, but this is, to me, this is reference to the entire patch. And he does say that in one of the statements. He's very specific about mesh three times. And then I think he's looking at this as the whole patch is failing and folding and buckling. But the only instance where they actually talk about buckling of the patch, page 50, paragraph 162. Yes, Your Honor. Okay. 173. Page 50, 173. Okay. Is there not evidence here that Dr. Comparatore had independent knowledge of the loss of fixation risk? Your Honor, there is. He had knowledge, but that's not the test. The test is substantially the same knowledge as the defendant's. And by no means did he have that at all. He had no idea of the likelihood of this happening, the prevalence of it happening all over the country, and the severity of the injuries that could have occurred. What do we make of his testimony that, based on what you know today, would you have changed any decision you made in terms of her care and treatment? Well, based on what I know today, this is Comparatore. I would do it robotically, but in 2005, I wasn't even aware of the existence of a robot. Probably, I would have used the same thing I did. Question. You would have done the same open hernia repair surgery with the same product back in 2005? Answer. Yeah, absolutely. I don't make anything of it, Your Honor. It goes to his credibility at best. If I go to a jury and I tell them that he answered that question that way, and then I show them all of the things that we have in the record here, I think I win every time. Okay. Thank you very much. Thank you both. We'll go on to the...